IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| E.B. GORHAM, individually, etc., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 08 C 6258 |
| | ) | |
| GENERAL GROWTH PROPERTIES, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| CHARLES SHEA, individually, etc., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 08 C 6654 |
| | ) | |
| GENERAL GROWTH PROPERTIES, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| SHERRY E. BARRETT, individually, etc., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 08 C 7069 |
| | ) | |
| GENERAL GROWTH PROPERTIES, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| SHARANKISHOR DESAI, individually, etc., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 09 C 487 |
| | ) | |
| GENERAL GROWTH PROPERTIES, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION AND ORDER

All four of these class actions against General Growth Properties, Inc. ("General Growth") and a number of individuals are before this Court, one via an original random assignment and the other three by reassignment on relatedness grounds under this District Court's LR 40.4. Because all four cases invoke the Private Securities Litigation Reform Act ("PSLRA"), what is up for decision is the designation of the lead plaintiff under 15 U.S.C. §78u-4(a)(3)[1]-- a choice that first requires a recounting of the history of these actions to this point.

Background

After first filer E.B. Gorham ("Gorham") caused a notice of pendency ("Notice") to be published contemporaneously with his filing (see Subsection (3)(A)(i)), Charles Shea ("Shea") and Sherry Barrett ("Barrett") filed their own complaints within the next 60 days. None of Gorham, Shea and Barrett, however, moved for lead plaintiff appointment under Subsection (3)(B).

Less than two weeks after publication of the Notice Sharankishor Desai ("Desai") retained Izard Nobel LLP ("Izard Nobel") as his counsel, providing that firm with a "Certification of Named Plaintiff" that conformed to what Subsection (2)(A) requires as a filing to accompany any PSLRA complaint. Although Desai then expressed his interest in being appointed as lead

---

[1] For simplicity's sake all further citations to PSLRA will take the form "Subsection --," omitting the prefatory "15 U.S.C. §78u-4(a)."

2

plaintiff, he became aware that another class member with a great deal more at stake--the Self Development Church--had also retained Izard Nobel as counsel and had indicated its own desire for lead plaintiff status. Recognizing the priority that the law ascribes to such a far larger financial interest (see Subsection (3)(B)(iii)(I)(bb)), Desai neither filed a separate action nor moved for his own appointment as lead plaintiff.

On December 30, 2008 each of three major players (coincidentally all churches: in addition to the already-mentioned Self Development Church, the Mt. Windsor Church and the Church of Carpenter) moved for lead plaintiff appointment. But by mid-January 2009 all three of them withdrew their respective motions.[2] Within a week thereafter Desai filed his own Complaint, intending to act as lead plaintiff. Neither of the only two class representatives now seeking lead plaintiff status, Shea and Desai, filed a motion for that purpose within 60 days after publication of the Notice.

## Lead Plaintiff Status

This Court has long held the view that Congress, in spelling out the PSLRA requirements for presumptive lead plaintiff designation, did not intend to make that presumption irrebuttable. To the contrary, this Court has always considered

---

[2] This Court has no information, although it does have a good deal of curiosity, as to the reasons for those withdrawals, including how it happened that two of them were lodged on exactly the same day--January 5, 2009.

a putative lead plaintiff's choice of counsel to be an important factor in determining whether that plaintiff will or "will not fairly and adequately protect the interests of the class" (Subsection (3)(B)(iii)(II)(aa)). In that respect, in conjunction with this Court's employment of a competitive bidding structure for prospective class counsel, which it has adopted in the interest of maximizing the potential for the class members' recovery if an action were to prove successful (either by settlement or through litigation), this Court wrote this nearly eight years ago (In re Bank One S'holders Class Actions, 96 F.Supp.2d 780, 784 (N.D. Ill. 2000)):

> Although the members of the Pension Group are thus entitled to presumptive status under Subsection (a)(3)(B) as the most adequate plaintiffs, a simple example--though framed for illustrative purposes to present a substantial contrast--will demonstrate why that rebuttable presumption does not necessarily control. Suppose for instance a plaintiff in such a presumptive status has agreed that its own lawyers, if acting as class counsel, are to receive one-third of any class recovery. Suppose further that another highly reputable law firm that has appeared of record for another putative plaintiff or plaintiffs, having demonstrated excellent credentials in earlier securities class action litigation and being clearly capable of handling the complexities of the current lawsuit, is willing to handle the case for half of that percentage fee-or to provide even a greater contrast, is willing to work for that lesser percentage and also to impose a cap on the firm's total fee payment. In that circumstance the presumptive lead plaintiff could certainly bind itself contractually to pay one-third of its share of the class recovery to its own lawyer, but any court would be remiss if it were to foist that one-third contingency arrangement on all of the other class members who had not themselves chosen that law firm to be their advocate.

4

*     *     *

> It should be remembered that although Subsection (a)(3)(B)(v) provides that the most adequate plaintiffs may "select and retain counsel to represent the class," that opportunity is expressly made "subject to the approval of the court." In this Court's view, if the presumptive lead plaintiffs were to insist on their class counsel handling the action on the hypothesized materially less favorable contractual basis, that insistence would effectively rebut the presumption that the putative class representatives, despite the amounts that they have at stake personally, were indeed the "most adequate plaintiffs"-that is, the class members "most capable of adequately representing the interests of class members" (Subsection (a)(3)(B)(i)).

This Court is of course well aware that the late great Judge Edward Becker, with whom this Court is proud to have enjoyed a warm friendship, did not agree that competitive bidding for the prospect of serving as class counsel[3] was an appropriate component of PSLRA evaluation. Although Judge Becker's massive opinion in In re Cendant Corp. Litig., 264 F.3d 201 (3d Cir. 2001) followed an unmerited characterization of this Court as "a jurist of extraordinary distinction" by quoting the same language from Bank One S'holders (see id. at 274-75), Judge Becker went on to explain--as a matter of statutory construction--his view that

---

[3] "Competitive bidding" is used here advisedly, in contrast with the mischaracterization commonly employed by critics of any such procedure by mislabeling it as an "auction." That pejorative tag is entirely unfair, for an "auction" denotes a price-only competition, while--by sharp contrast--competitive bidding of the type employed by this Court and others who have used that process applies strict scrutiny to the quality of representation and to the experience afforded by the law firms involved, to make certain that the class receives the best possible substantive representation as well as getting it on favorable economic terms.

the designation of lead plaintiff should be made without reference to the arrangements between that plaintiff and his, her or its counsel.

This Court certainly lays no claim to prescience, but what these cases have generated really provides a direct validation of the concern that it expressed in Bank One S'holders. All three really major investors in General Growth, the churches referred to earlier, were of the precise type that the sponsors of PSLRA hoped to involve to assure that securities class actions would be client-controlled rather than lawyer-driven--but all three have backed away from playing the lead plaintiff role (of those three, Self Development Church, with well over a half-million dollars in loss suffered as the result of its acquisition of more than 70,000 General Growth shares during the class period, had the most at stake by a wide margin).

That being so, the only two remaining lead plaintiff candidates are Shea, who bought only 180 shares during the proposed class period, representing an investment of less than $3,000 that has generated perhaps a $2,500 loss[4] and Desai, whose purchases aggregated some 2,200 shares and generated a considerably larger loss. And importantly, the competing submissions from those shareholders' respective counsel, which

---

[4] Indeed, even among the four plaintiffs in the currently pending actions, Shea had the smallest purchase volume by a substantial margin.

6

have been provided to this Court at its request (submissions that have been kept under wraps because this Court had not then settled on the use of competitive bidding), reveal that the arrangements that Shea has made with his counsel are far inferior in terms of class benefit to those provided by the Izard Nobel fee arrangement. In that respect, even though this Court lacks information as to when the respective fee arrangements were reached, it is certainly worth noting that Izard Nobel was also the chosen counsel of the Self Development Church, already identified as having been the shareholder that has the most at stake in the outcome.

This Court flatly rejects the prospect of having such a tiny wisp of a tail--Shea with his minimal investment in General Growth--wag the very large dog of the plaintiff class. What Shea has to lose in terms of his in-pocket recovery, if the class is successful in the litigation and if his own counsel's formulation were to apply rather than the far more client-favorable formulation proffered by Izard Nobel, is in the range of a few hundred dollars, while what the class would stand to lose under the Shea-sponsored formula would be measured in millions of dollars.

It should be emphasized that both Izard Nobel and Shea's proposed designees (Coughlin Stoia Geller Rudman & Robbins LLP, working with Miller Law LLC) have submitted impeccable

7

credentials.  All three of those firms have shown themselves to be of very high quality, with extensive experience in the area of securities class actions.  And in that regard this Court again stresses its rejection of the already-referred-to misleading practice followed by critics of the use of competitive bidding, who consistently employ the pejorative label "auction," for this Court places heavy reliance on the first-class representation of the class presaged by those factors.

Unable to match the competing Izard Nobel bid on the merits (though of course Shea and his chosen counsel are unaware of what have proved to be the far less advantageous terms submitted by his counsel), they seek to knock Desai out of the bidding box by pointing to his lawsuit as having been filed more than 60 days after publication of the Notice.  As Shea and his counsel would have it, Shea must be determined to have "the largest financial interest in the relief sought by the class" (Subsection (3)(B)(iii)(I)(bb)) and hence must be "the most adequate plaintiff" because, to use the familiar colorful phrase, "he's the only crap game in town"[5]--his purely de minimis involvement must qualify under the statute because it's greater than nothing at all.

---

[5] Some apology is no doubt due for the use of the quoted phrase, which originates from its being the punchline in response to the question of why someone is willing to participate in a crooked game of craps.  Needless to say, nothing of the sort is even hinted at here, either as to the competing putative class representatives or as to their respective sets of lawyers.

8

But this is not the first time that courts have had to deal with situations in which the PSLRA itself hasn't been fully prescient in anticipating the workings of its complex provisions to address the many variations presented by securities class actions. Such problems have been confronted and overcome in a number of cases, often by some imaginative construction of the statutory provisions--see, e.g., such cases cited by Desai's counsel as Coopersmith v. Lehman Bros., Inc., 344 F.Supp.2d 783, 786 (D. Mass. 2004); In re Microstrategy Inc. Sec. Litig., 110 F.Supp.2d 427, 433 (E.D. Va. 2000); Chill v. Green Tree Fin. Corp., 181 F.R.D. 398, 404 n.7 (D. Minn. 1998); cf. Initial Public Offering Sec. Litig., 214 F.R.D. 117, 120 & n.4 (S.D. N.Y. 2002); In re NYSE Specialists Sec. Litig., 240 F.R.D. 128, 142 (S.D. N.Y. 2007). In that regard one of the cases on which Shea himself seeks to rely, In re Texlon Corp. Sec. Litig., 67 F.Supp.2d 803, 824 n.37 (N.D. Ohio 1999) recognizes the propriety of opening up the lead plaintiff application process to others where, as is certainly true of Shea, the applicant's claimed financial interest is merely "nominal."

In this instance it is solely the result of Desai's entirely proper decision not to file an initial lawsuit because he knew his own chosen law firm was representing a much larger prospective plaintiff that caused him to forgo such filing within the 60-day period that is now sought to be employed by Shea to

9

exclude Desai from consideration. That smacks of excessive formalism, and this Court repudiates it.

In summary, this Court is fully prepared to reject Shea's submission because any presumption that he is the "most adequate plaintiff" has been fully rebutted by the inferiority of his chosen counsel's proposal for the fees to be charged to the class members out of any recovery, with the corollary being that as between the two present candidates for the lead plaintiff position the nod must go to Desai. This Court defers the present disclosure of the two competing counsel bids (which conclusively demonstrate why Desai should be chosen) for a brief period, but it does so solely because of the possibility that the Self Development Church (which, as already stated, had also chosen Izard Nobel as its counsel and is unquestionably the General Growth shareholder with the most at stake among all the prospective class litigants identified to this point) might choose to reinstate its application to serve as lead plaintiff. If that does not occur within the next two week period, this opinion will be supplemented by one that discloses and discusses the two competing bids and hence the justification for this Court's choice.

_____
Milton I. Shadur
Senior United States District Judge

Date: March 16, 2009