**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SHARANKISHOR DESAI,<br>Individually and on behalf of<br>all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>JOHN BUCKSBAUM,<br>BERNARD FREIBAUM,<br>ROBERT A. MICHAELS, JOEL BAYER,<br>EDMUND J. HOYT, JEAN SCHLEMMER,<br>SHARON POLONIA, RONALD L. GERN,<br>ANTHONY DOWNS, BETH STEWART,<br>and ALEXANDER BERMAN,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **CASE NO. 09-cv-487 (MIS)** |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

**I.    INTRODUCTION**

The parties have reached an agreement to settle this class action litigation for $15.5 million in cash (the "Settlement") on the terms set forth in a Stipulation for Settlement dated February 16, 2010 (the "Stipulation"), subject to the Court's approval.[1] In order to begin the settlement approval process and effectuate the Settlement in accordance with Rule 23 of the Federal Rules of Civil Procedure, Lead Plaintiff has submitted his Motion for Preliminary Approval of Class Action Settlement (the "Motion") and this Memorandum of Law in support thereof.  The Motion respectfully requests that the Court enter the [Proposed] Order Preliminarily Approving Settlement, Directing Notice and Scheduling Hearing Date (the "[Proposed] Order"), attached to the Stipulation as Exhibit A, that, *inter alia,* (1) preliminarily approves the Settlement; (2)

---

[1]   A copy of the Stipulation is attached as Exhibit 1 to the Motion.

schedules a hearing date (the "Settlement Fairness Hearing") to consider whether to grant final approval of the Settlement, the Application by Lead Counsel for an award of attorneys' fees, and reimbursement of costs and expenses (the "Fee and Expense Application"), and the Application for Award to Lead Plaintiff (the "Lead Plaintiff Award Application"); (3) preliminarily certifies a class for settlement purposes (the "Settlement Class"); and (4) directs the dissemination of notice of the Settlement and the Final Hearing Date to the members of the Settlement Class. For the reasons set forth below, the Motion should be granted.

## II.    THE SETTLEMENT MERITS PRELIMINARY APPROVAL

### A.    Background to the Settlement

#### 1.    Defendants' Motion to Dismiss

On September 17, 2009, this Court issued a Memorandum Opinion and Order ("the Order") [Doc. #64] dismissing substantial portions of Lead Plaintiff's Amended Class Action Complaint (the "Complaint"). First, the Court held that several of the specific statements alleged in the Complaint to be false or misleading were not actionable as forward-looking statements entitled to the PSLRA's "safe harbor" protections. Order at 6-36. Second, the Court dismissed Lead Plaintiff's claim that Defendants were liable for their violation of General Growth's published ethics policy through certain undisclosed loans between Defendants. Order at 40-46. Third, the Court dismissed Lead Plaintiff's claim that Defendants engaged in an improper scheme to profit from a short-selling ban they had requested and obtained from the SEC. Order at 51-53 Finally, the Court dismissed Lead Plaintiff's "control person" allegations against each Defendant. Order at 54-57.

The Court also expressed reservations as to the claims that survived Defendants'
motion to dismiss.  For example, the Court concluded that Lead Plaintiff had adequately
alleged, for purposes of overcoming Defendants' Motion to Dismiss, that Defendants had
misrepresented their ability to obtain needed financing throughout the Class Period.  *See*
Order at 6-36.  However, the Court questioned Lead Plaintiff's ability to prove this claim
at trial.  In particular, the Court noted Defendants' (undisputed) argument that "General
Growth ***was*** able to secure financing – and significant amounts of it – during the Class
Period."  Order at 29-30 (emphasis in original).  The Court then specifically concluded
that this fact "may ultimately cause serious damage to Plaintiff's case."  *Id*.

The Court also expressed reservations concerning many of the other key points on
which Lead Plaintiff relied in the Complaint.  For example, Lead Plaintiff relied heavily
upon the "Metz Declaration," which Lead Plaintiff argued demonstrated that Defendants
knew by ***mid***-2008 at the latest that they would not be able to obtain needed financing.  In
the Order, the Court noted that the "'Metz Declaration' has confirmed that ***by September
15, 2008***, the real estate financing well had really run dry in terms of the scope of
refinancing that was essential to General Growth's viability."  Order at 17 (emphasis
added).  However, the Court expressed substantial doubt that the Metz Declaration
supported Lead Plaintiff's claims regarding ***earlier*** alleged misrepresentations.  Rather,
the Order emphasized that "it is not entirely clear from the Metz Declaration when
General Growth purportedly knew that loans . . . were unavailable."  Order at 27.  As a
result, the Court noted that it was sustaining Plaintiff's claims with regard to certain

alleged misrepresentations only because "this Court must 'draw all reasonable inferences in favor of the plaintiff' on a motion to dismiss."  Order at 24.[2]

### 2.    The Mediation

On January 12, 2010, the Parties participated in a full-day mediation session before the Honorable Daniel Weinstein (Ret.), an experienced mediator and former judge who has considerable knowledge and expertise in the field of federal securities law.  In advance of the mediation, counsel for each of the parties prepared and exchanged detailed mediation submissions setting forth their respective positions, and Defendants provided Lead Counsel with a substantial number of documents illustrating the financing options available to and obtained by General Growth throughout and after the Class Period, as discussed below.

At the mediation, counsel for each party made further detailed factual and legal presentations concerning, *inter alia,* the merits of the factual and legal claims asserted in the Litigation and the financing options available to and obtained by General Growth throughout and after the Class Period.  The hard-fought, arms'-length mediation resolved when the Parties agreed to accept a mediator's proposal from Judge Weinstein.  On February 16, 2010, counsel for the parties executed the Stipulation.

---

[2]   The Court also declined to endorse Lead Plaintiff's loss causation theory, simply holding that "on the present motion to dismiss, with all reasonable inferences drawn in Plaintiff's favor, the loss causation pleading requirement has been met" but that if loss causation arguments "become relevant at a later stage of the litigation, they can be addressed at that time."  Order at 42 and n.11.  Indeed, Plaintiff could face hurdles establishing damages at trial, particularly with regard to Defendants' alleged misrepresentations prior September 18, 2008, as General Growth's stock price remained stagnant or declined following each of those alleged misrepresentations.  Although Lead Counsel would argue that Plaintiff could still establish damages because General General Growth's stock price would have dropped more but for the misrepresentations, there is a genuine risk that the jury would not accept this argument.

**B.      The Proposed Settlement Should Be Preliminarily Approved**

Preliminary approval should be granted where the proposed settlement "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval."  *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997).  The primary question raised by a request for preliminary approval is whether a proposed settlement is "within the range of reasonableness."  Manual For Complex Litigation (Fourth) §§ 21.63-21.64 (2004) at § 40.42; *see Armstrong v. Bd. Of Sch. Dirs. Of City of Milwaukee,* 616 F.2d 305, 314 (7th Cir. 1980) (purpose of preliminary approval process is "to determine whether the proposed settlement is 'within the range of possible approval'") (citation omitted), *overruled on other ground by Felzen v. Adreas,* 134 F.3d 873 (7th Cir. 1998).

Here, the proposed $15.5 million settlement is "within the range of reasonableness," especially given the substantial hurdles that the Settlement Class would have to overcome to obtain any recovery.  In order to prevail at trial with regard to the limited claims in the Complaint that were not dismissed, Lead Plaintiff would have to prove that, at the time Defendants made each particular statement, Defendants knew that the statement was false or misleading.  Lead Counsel has reviewed documents as part of the mediation process that demonstrate that Defendants will have very strong arguments with regard to each and every surviving misrepresentation – including Defendants' alleged misrepresentations on September 18 and 22, 2008, following the collapse of the financial markets on September 15, 2008 – that their statements were true (or, at a minimum, that they believed them to be true) when made.

1.    **Plaintiff Faces Substantial Hurdles To Proving Defendants'
      April 30, 2008 Statements Constituted Knowing
      Misrepresentations**

First, the Court did not dismiss all of Lead Plaintiff's allegations concerning

Defendants' alleged misrepresentations during an April 30, 2008 conference call that

financing was available from banks and life insurance companies.  Complaint, ¶¶45(a),

(c), (e); Order at 21-28.  However, Defendants have provided documents to Lead Counsel

arguably demonstrating that, by April 30, 2008, General Growth was in discussions with

several major banks regarding the terms of a bank facility, and that General Growth

ultimately raised $1.51 billion through a bank facility with thirteen participating banks

later that summer.  Defendants have also provided documents demonstrating that General

Growth closed a $76.5 million loan with an insurance company in the weeks following

the April 30, 2008 conference call, and were in continuing discussions with other life

insurance companies throughout (and after) the Class Period.  Accordingly, substantial

evidence exists which could make it difficult for Lead Plaintiff to prove that Defendants

made knowing misrepresentations during the April 30 conference call.

2.    **Plaintiff Faces Substantial Hurdles To Proving Defendants'
      May 8, 2008 Statements Constituted Knowing
      Misrepresentations**

Second, the Court did not dismiss Lead Plaintiff's allegations that Defendants

misrepresented in a Form 10-Q filed with the SEC on May 8, 2008, that "we currently

anticipate that we will be able to repay or refinance all of our debt on a timely basis."

Complaint, ¶47; Order at 28.  However, as discussed above, Defendants have provided

documents to Lead Counsel arguably demonstrating that as of May 8, 2008, General

Growth was actively negotiating the aforementioned bank facility and insurance company

loans, which would cover a substantial portion of its debt.  Moreover, Defendants have

provided documents demonstrating that by May 2008, General Growth, with the

assistance of Goldman Sachs and Morgan Stanley, had begun planning a large-scale bond

offering to secure financing for twenty-two properties with maturities in 2008 and 2009.

Accordingly, substantial evidence exists which could make it difficult for Lead Plaintiff

to prove that Defendants made knowing misrepresentations on May 8, 2008.

> 3.    **Plaintiff Faces Substantial Hurdles To Proving Defendants'
> July 31, 2008 Statements Constituted Knowing
> Misrepresentations**

Third, the Court did not dismiss all of Lead Plaintiff's allegations concerning

Defendants' alleged misrepresentations during a July 31, 2008 conference call that

General Growth would be able to refinance certain properties on favorable terms and

would be able to sell bonds to raise funds.  Complaint, ¶¶53(a),(b),(d),(f); Order at 30-33.

However, documents provided by Defendants undermine the strength of the allegations.

For example, Defendants have provided documents arguably demonstrating that, earlier

in July, General Growth had begun the process of soliciting loan proposals from potential

lenders regarding refinancing one major property, and that General Growth received

multiple proposals for new loans (including some which were more than double the

amount of the maturing loan) throughout the Class Period.  Defendants have also

provided documents arguably demonstrating that, both before and after the July 31, 2008,

conference call, several investors expressed interest in co-owning General Growth's

malls.  Finally, Defendants have provided documents concerning General Growth's

ongoing efforts as of July 31, 2008, to structure a bond deal, the first stage of which was

scheduled to close in October 2008 for over $2 billion.  Accordingly, substantial evidence

exists which could make it difficult for Lead Plaintiff to prove that Defendants made

knowing misrepresentations on July 31, 2008.

>    **4.    Plaintiff Faces Substantial Hurdles To Proving Defendants'**
>         **August 8, 2008 Statements Constituted Knowing**
>         **Misrepresentations**

Fourth, the Court did not dismiss Lead Plaintiff's allegation that Defendants

misrepresented in a Form 10-Q filed with the SEC on August 8, 2008, that "we are

currently considering various types and forms of transactions to refinance the remaining

debt."  Complaint, ¶56; Order at 33-34.  However, as discussed above, Defendants have

provided documents arguably demonstrating that various types and forms of financing

transactions – including the bank facility, life insurance company loans, a bond offering,

and co-ownership proposals – were being considered and/or pursued as of August 8,

2008.  Accordingly, substantial evidence exists which could make it difficult for Lead

Plaintiff to prove that Defendants made knowing misrepresentations on August 8, 2008.

>    **5.    Plaintiff Faces Substantial Hurdles To Proving Defendants'**
>         **September 18 and 22, 2008 Statements Constituted Knowing**
>         **Misrepresentations**

Fifth, the Court did not dismiss Lead Plaintiff's allegations concerning Defendant

John Bucksbaum's September 18, 2008, statement that he had "every confidence" that

General Growth's debt would be refinanced, and Defendants' subsequent statements in a

September 22, 2008 press release concerning General Growth's "current anticipat[ion]"

about its ability to obtain refinancing.  ¶¶62, 75; Order at 34-36.  Lead Counsel asserted

that the claims concerning these statements were strong because, as this Court has noted,

the Metz Declaration "has confirmed that by September 15, 2008, the real estate

financing well had really run dry in terms of the scope of refinancing that was essential to General Growth's viability."  Order at 17.

However, Defendants have provided documents arguably demonstrating that they had reason to be optimistic as to General Growth's ability to obtain financing even in the second half of September 2008.  Even as late as September 10, 2008, after the collapse of Fannie Mae and Freddie Mac, Goldman Sachs and Morgan Stanley made detailed presentations to General Growth's Board proposing several different financing options and expressing confidence in General Growth's ability to obtain that financing.  Even after the collapse of Lehman Brothers (and the real estate lending market) on September 15, 2008, Goldman Sachs and Morgan Stanley expressed their continuing optimism that General Growth would be able to obtain financing of one sort or another.  Indeed, Goldman Sachs presented numerous financing possibilities at a Board meeting on September 21, 2008.  Moreover, Goldman Sachs and Morgan Stanley worked consistently in late September and into October to bring the bond deal (including over $2 billion in financing by October 2008) to market, and the banks continued to advise Defendants until mid-October that they believed that the bond deal could be successfully completed.  Finally, Defendants have produced documents demonstrating that the Company and its bankers *succeeded* in raising approximately $1 billion in financing in the months following the Class Period.  Accordingly, notwithstanding the Metz Declaration, evidence also exists which could make it difficult for Lead Plaintiff to prove that Defendants made knowing misrepresentations on September 18 and 22, 2008.

6.      **Plaintiff Faces An Additional Hurdle To Proving That Defendants Acted With Scienter**

In addition to the documents discussed above, the documents provided by Defendants impose an additional hurdle to proving that Defendants acted with scienter. Throughout September, Defendants were advised extensively by Goldman Sachs, Morgan Stanley, and Sullivan & Cromwell, including concerning the specific language of the September 22, 2008 press release. In addition, Lead Plaintiff relies heavily in the Complaint on Defendants' insider sales in the two weeks following Bucksbaum's September 18, 2008, statement to establish scienter. Complaint, ¶114(a)(vi). However, Defendants have provided documents demonstrating that at a September 21, 2008 meeting of General Growth's board, a board member specifically asked Sullivan & Cromwell, the Company's outside counsel, whether the board should prohibit insider trading by General Growth's officers and directors. Based on Sullivan & Cromwell's advice, the Board arguably could reasonably have concluded that such a ban was ***not*** necessary. Accordingly, substantial evidence exists which could make it difficult for Lead Plaintiff to prove that Defendants' insider sales constituted evidence of scienter.

7.      **Plaintiff Faces Substantial Hurdles To Proving The Form 144 Claims**

The Court also did not dismiss Lead Plaintiff's allegations concerning certain Defendants' filing of false Form 144 Attestations at the times of their sales. Complaint, ¶104; Order at 38-40. However, the Form 144 Attestations were only false or misleading if the Form 144 Defendants knew adverse undisclosed information about General Growth's refinancing prospects. To the same extent that Lead Plaintiff may face substantial hurdles proving that Defendants' statements concerning refinancing were

10

knowingly false or misleading, as discussed above, Lead Plaintiff will face the same hurdles demonstrating that the 144 Defendants knew adverse undisclosed information at the time they filed their Forms 144.

       8.      **The Settlement Is Well Within the Range of Possible Approval**

Given the substantial factual, legal and evidentiary hurdles that would need to be overcome in order for the Settlement Class to be successful at trial, the proposed $15.5 million Settlement amount is well-within the range of possible approval.  Based on the Court's holdings in the Order and Lead Counsel's own investigation and analysis, Class Members who purchased shares of General Growth on September 19, 2008 (immediately following Bucksbaum's "every confidence" statement near the end of the September 18, 2008 trading day) have by far the strongest claim in this litigation because the truth began to leak out, and the fraud began to dissipate, immediately thereafter.  According to an analysis performed by the damages expert retained by Lead Counsel, Class Members who purchased General Growth shares on September 19, 2008, sustained total damages of approximately $23.4 million.  Beginning on September 22, 2008, the next business day after September 19, General Growth's stock price began dropping significantly as the first of a number of leaks and disclosures throughout the remainder of the Class Period occurred.  Consequently, the maximum damages for Class Members who purchased after September 19, 2008, through October 24, 2008 (the remainder of the Class Period) are only $74.7 million more, assuming that Plaintiff obtained the fullest possible recovery for those drops.[3]  Accordingly, given the genuine hurdles Lead Plaintiff would arguably face

---

[3]  To translate these maximum damages into distributions to Class Members, Lead Counsel devised a Plan of Allocation for the Settlement proceeds (set forth in Exhibit A-1 to the Stipulation) to take into account the relative strength of each claim in the Complaint following this Court's Order on Defendants' Motion to Dismiss and in accord

(as discussed above) even as to Bucksbaum's alleged misrepresentation on September 18, 2008, Lead Counsel respectfully submit that the $15.5 million Settlement amount is an outstanding result.

## III.   PROPOSED SCHEDULE OF EVENTS

In connection with preliminary approval of the Settlement, Lead Plaintiff requests that the Court set the date of the final settlement hearing (the "Final Hearing Date"). Lead Plaintiff anticipates that he will need approximately ten weeks from the date of Preliminary Approval to the date of the final settlement hearing in order, *inter alia,* to allow adequate time for notice to be sent to and reviewed by members of the Settlement Class.  Accordingly, if the Court grants preliminary approval of the proposed Settlement by February 26, 2010, Lead Counsel respectfully suggests that the Court schedule the Final Hearing Date on a date between May 18, 2010 and May 21, 2010, inclusive, with the parties filing any briefs in support of the Settlement no later than three weeks prior to the Final Hearing Date and Class Member objections to the settlement due no later than two weeks prior to the Final Hearing Date.  *See* ¶¶14, 16 and 19 of the [Proposed] Order.

---

with the loss causation principles set forth in *Dura Pharm, Inc. v. Broudo,* 544 U.S. 336 (2005).  Under the Plan of Allocation, a claimant who purchased on September 19, 2008, will receive a distribution based upon the **full** amount of their loss (subject to maximums calculated in accord with *Dura*).   By contrast, Class Members who purchased General Growth before September 19, 2008, will receive distributions based upon 20% of their losses on those shares (also subject to *Dura* maximums), based on Lead Counsel's assessment of the strength of those earlier claims after consideration of the documents provided by Defendants and the Court's discussion of those claims in its Order. Similarly, because negative information about General Growth's financing prospects continued to leak out immediately after September 19, including negative analyst reports that caused a significant drop on September 22, 2008 (the first trading day after September 19), Class members who purchased after September 19, 2008 will also receive distributions (subject to *Dura* maximums) based upon 20% of their losses on those shares.

IV.    **CONCLUSION**

For the reasons set forth above, Lead Plaintiff respectfully requests that the Court

(1) grant preliminary approval of the Settlement; (2) direct the dissemination of notice to

the members of the Settlement Class; and (3) schedule a Final Hearing Date.


Dated: February 17, 2010                Respectfully submitted,

                                        By /s/  Carol V. Gilden
                                        Carol V. Gilden
                                        COHEN MILSTEIN SELLERS & TOLL
                                        PLLC,
                                        190 South LaSalle Street, Suite 1705
                                        Chicago, IL 60603
                                        Tel.:  (312) 357- 0370
                                        Fax:  (312) 357- 0369

                                        *Liaison Counsel for Lead Plaintiff*

                                        IZARD NOBEL LLP
                                        Robert A. Izard
                                        Jeffrey S. Nobel
                                        Seth R. Klein
                                        Matthew L. Tuccillo
                                        Nancy A. Kulesa
                                        29 South Main Street
                                        Suite 215
                                        West Hartford, CT 06107
                                        Tel.:  (860) 493-6292
                                        Fax:  (860) 493-6290

                                        *Lead Counsel for Lead Plaintiff*

## CERTIFICATE OF SERVICE

I, Carol V. Gilden, hereby certify that on February 17, 2010, I caused true and correct copies of this Memorandum to be served on the parties listed below via the CM/ECF system which will send notification of such filing to registered parties.

/s/ Carol V. Gilden

Anton R. Valukas
Dean N. Panos
Howard S. Suskin
Marc D. Sokol
Jenner & Block,LLP
330 N. Wabash Avenue
Chicago, IL 60611

Lori Ann Fanning
Marvin Alan Miller
Miller Law, LLC
115 South LaSalle Street, Suite 2910
Chicago, IL 60603

Sarah R. Wolff
Barry Stuart Rosen
Robin J Elowe
Vanessa Kolbe Eisenmann
Reed Smith LLP
10 South Wacker Drive
40th Floor
Chicago, IL 60606